## E. B. Dennison *v.* C. T. Jessup.

1. The taking of a note as payment of a precedent debt, or upon any new consideration passing at the time, as extending time of payment, is a sufficient consideration to protect the assignee, being a holder for value, *bona fide*, and without notice.
2. When the note is dated by mistake in 1855, when its true date is 1856, and when received by the holder is *apparently overdue*, but not in fact so, his title being otherwise perfect, is not, on this account, subject to the equities between the original parties.

SPECIAL TERM.—This is an action brought by the plaintiff as indorsee and holder of a promissory note for $350, made by the defendant, payable to the order of W. D. Ludlow, and indorsed by him, for accommodation of the defendant, to S. R. Smith, who indorsed it and delivered it to Horace Bronson, who transferred it to plaintiff. It is admitted that the plaintiff is entitled to judgment, unless the facts set up by way of defense are an answer to the action. The facts are these: The note bears date the first day of January, 1855, and is payable six months *after date.* It was made in fact, and delivered to Smith, on the first day of January, 1856, but dated as of 1855 by mistake. The note was given upon an agreement between Jessup and Smith, that the latter should compromise and discharge a prosecution for felony, instituted by Smith against Jessup, and for no other consideration. It was transferred by Smith to one Bronson, and the consideration of such transfer having failed, it should have been returned. The defendant, however, gave another note for the same amount to Smith, instead thereof, which has been paid. In January, 1856, before the true time of payment had elapsed, Bronson being indebted to the plaintiff in a certain sum of money for boarding, transferred the note to him, upon an agreement that the plaintiff should collect the same, and after deducting the amount due him, and paying thereout such sum as should thereafter become due to plaintiff on like account, the

balance, if any, was to be paid to Bronson. In consideration of the assignment, the plaintiff forbore to press Bronson for immediate payment, and allowed his debt to accumulate. The amount of the plaintiff's claim against Bronson, with interest to this time, is $379.75, being a little short of the sum due on the note. At the time of receiving the note, the plaintiff, perceiving it was apparently overdue, inquired of Bronson in regard to it, and was assured by him of the mistake in the date, and the manner of its occurrence. He called with Bronson at the defendant's place of business, to make further inquiry, but not finding him in, consented to take the note upon Bronson's assurance, but without any knowledge or suspicion that Bronson was not a *bona fide* holder, or that there was any defect or failure in the consideration of the note.

*Thos. C. Ware*, for plaintiff.

*T. A. O'Connor, A. H. McGuffey* and *Mills & Hoadly*, for defendant.

SPENCER, J. There is no doubt that the illegality in the consideration of the note renders it void as between the original parties, and the only question to be decided is whether, as the note was negotiable and negotiated before its actual maturity, the plaintiff, as an innocent holder for value, in the usual course of business, is affected by the illegality, or want of consideration.

So far as the consideration of the transfer to the plaintiff is concerned, there seems to be no doubt that the plaintiff is a purchaser for value, and, in the usual course of business, within the principle of the decisions heretofore made by this court, and sustained by the Supreme Court in the late case 6 Ohio, St. 448, *Roxborough* v. *Messick*.

The taking of a note as payment of a precedent debt, or upon any new consideration passing at the time, as extending time of payment, is a sufficient consideration for the transfer, to protect the assignee as a holder for value. Here

it is in proof that the note was taken, in fact, in payment of a debt then due from Bronson to plaintiff, the collection of which plaintiff forebore, and, in fact, in security for further credit to be given by plaintiff to Bronson, on account of board, and which credit was, in fact, given.

The chief, indeed we may say, the sole ground of defense relied upon, in this connection, is, that inasmuch as the note by its terms was overdue, at the time of the transfer, it was not a note transferable as commercial, paper, and therefore the plaintiff is not entitled to protection under the commercial rule; or to express the rule in a different form, that the note, when first shown to the plaintiff, was by its terms already dishonored, and therefore, the plaintiff was chargeable with notice that there was some just cause for such dishonor, and being thus put upon inquiry, which he has failed to make, can not set up his ignorance of the facts as evidence of good faith.

It seems to me, that the principle upon which the rule is founded, that the dishonor of commercial paper carries notice to subsequent parties of the equities existing between the original parties, does not properly apply to a case like the present. That principle is founded upon the notion of commercial integrity,—that a party would not fail to comply with his obligation unless there was some just excuse for so doing. But when it is clear that the note is not in fact due, and that, therefore, there is no dishonor, the inference is at once rebutted, which arises from dishonor, and the party has a right to presume that the note will be paid according to its intent. In the first case, the party can not be said to rely upon a promise already broken; in the latter, he relies upon a promise as yet in full force and inviolate. It is the dishonor in fact which puts the world upon inquiry, not the mistaken appearance of dishonor. The authority relied upon in argument by the plaintiff's counsel, will warrant the distinction here presented, *i. e.*, when a note is shown to have a genuine existence, although by its face the time has not arrived, when its apparent existence

is to commence, yet its actual existence is all that the community is concerned to know, and the circumstance that by the date of the note its existence appears to commence *in futuro*, does not affect its negotiability so as to charge the holder with notice of any defect in its inception; and so, also, when the note is not, in fact, due, although, by its face, its functions seem to have been performed.

The case, 8 Wend. 478, *Brewster* v. *McCardel*, was that of an action brought by the indorsee against the maker of a note, dated May 1, 1829, payable three months after date. It was delivered to the payee, and by him indorsed, three months before its date, and six months before maturity. On the trial the defendant proved failure in the original consideration, and the judge charged the jury that the negotiation of the note before the day when it bore date, was sufficient to put the plaintiff upon inquiry, and that he, therefore, took it, subject to any defense which might have been made had the suit been brought by the original payee. Under this charge the defendant had a verdict, and the case being reheard on motion for a new trial, it was held that the putting a note in circulation before its date, did not let in equities between the original parties, and that, disconnected from other circumstances, it was not a ground of suspicion to put the indorsee upon inquiry. The true ground of this decision was that the note had an actual existence from the time of its delivery, although, from the date, it might have appeared that the note was not intended to be put in circulation until a future day; yet the defendant gave it actual circulation before. The date, therefore, was not essential, except to fix the time of payment. So, in the case under consideration, the defendant himself gave circulation to the note after the time when it appeared to have value as negotiable paper. His intention was that it should become payable six months after delivery, and such was the true time of payment. The actual date was immaterial. The note, in fact, had existence as one not yet due, and nothing remained to be inquired of but the true time of payment.

It is replied, however, by the defendant's counsel, that this case falls within the provisions of section 3 of the "Act making certain instruments of writing negotiable;" Swan, 575, as follows: "That if any such bond, note, or bill of exchange shall be indorsed after the day on which it is made payable, and the indorsee shall institute an action thereon against the maker, drawer, or obligor, the defendant shall be allowed to set up the same defense that he might have done had the same action been instituted in the name and for the use of the person to whom the said bond, bill, or note was originally made payable;" and that, forasmuch as this note was, by its terms, made payable in six months from its date, *i. e.*, January 1, 1855, the defense now set up is expressly authorized. But the rule of the common law in regard to commercial paper was not intended to be changed, in my opinion, by this provision of the statute. On the contrary, forasmuch as the statute extended negotiable paper, so as to include bonds as well as notes, it seemed necessary to declare that the same rule should govern their construction, and the liability of parties to them. The phrase, "after the day on which it is made payable," means "after the day on which it, in fact, becomes payable," and "was made by the parties to become payable." It was the fact that the time of payment had elapsed, which is the material point in contemplation of the legislature, and not the apparent time of payment.

On the whole case, therefore, I am of opinion that the plaintiff is entitled to judgment for the amount due him from Bronson.

Judgment for plaintiff.